UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| JA-FATHER DOE 1 and JA-MOTHER DOE 1, individually and as parents and natural guardians of JA-MINOR DOE 1, a minor child,<br><br>Plaintiff,<br><br>v.<br><br>ANTON JOSEPH LAZZARO a/k/a TONY LAZZARO,<br><br>Defendant. | Case No.: 0:21-cv-1985-WMW-JFD<br><br>**AFFIDAVIT OF SUSAN PHIPPS-YONAS, Ph.D., L.P.** |

STATE OF ARIZONA   )
                   ) ss.
COUNTY OF MARICOPA )

Susan Phipps-Yonas, Ph.D., LP, being first duly sworn, deposes and states as follows:

1. I make this Affidavit in support of Plaintiffs' request to proceed in Minor Doe's sexual trafficking action using pseudonyms, in order to preserve Minor Doe's anonymity related to public court filings.

**Qualifications:**

2. I have been a licensed psychologist in Minnesota since December 1981. I also became a licensed psychologist in Arizona in January 2017.

3. I earned my doctorate in clinical psychology from the University of Minnesota in 1978, having completed both the child and adult tracks of study.

4. After I began a therapy practice in 1982, I often worked with children, adolescents, and adults who were victims of childhood sexual abuse, and I developed skills in the area of forensic evaluation of such clients.

5. In 1988, I first taught a graduate seminar on the topic of sexual abuse at the Institute of Child Development at the University of Minnesota, where I continued to teach similar classes over a period of six years.

6. I have conducted presentations, as an expert in the area childhood sexual abuse, at conferences in the United States and internationally, including, most recently, in Colombia and Brazil.

7. I have written and co-written articles published in peer-reviewed journals on psychology, sexual abuse, and sexuality,[1] and I have been retained as a consulting expert in a number of criminal and civil matters involving sexual assault, childhood sexual abuse, and child pornography.

8. Over the past three decades, I have conducted more than one hundred evaluations of minors and adults who were sexually abused as children, and I have continued to read professional journals and books relevant to this topic to ensure that I am aware of the research relevant to such work.

---

[1] Some examples of my work are: Susan Phipps-Yonas, *Sexual Trauma and Psychological Injuries: What Experts Need to Know*, PSYCHOLOGICAL INJURY AND LAW, 5, 12–36 (2012) and Susan Phipps-Yonas, *Making the Case for Victims' Privacy in Civil Sexual Abuse Lawsuits*, PSYCHOLOGICAL INJURY AND LAW, 14, 71-76 (2021).

## Opinion:

9.      It is my opinion, to a reasonable degree of psychological certainty, that forcing victims/survivors of childhood sexual abuse to reveal their identities in public court filings will cause multiple negative psychological consequences for them. Publicly revealing victims' identities against their wishes will likely exacerbate any preexisting psychiatric problems and will likely foster new symptoms, thereby compromising their mental and physical health, as well as their relationships, both primary and secondary.

10.     The above opinions are generally accepted in the psychological community and are supported by a multitude of peer-reviewed literature, as further explained below.

11.     Numerous psychological studies have demonstrated that being sexually abused as a child often results in the development of Posttraumatic Stress Disorder (PTSD) and stigmatization for victims,[2] with symptoms that may emerge in the immediate aftermath of the abuse or may develop later on.[3]

---

[2] *See, e.g.*, Finkelhor, D., & Browne, A., *The Traumatic Impact of Child Sexual Abuse: A conceptualization*, AMERICAN JOURNAL OF ORTHOPSYCHIATRY, 530-541, 55 (1985). This seminal article outlines four factors ingrained in a sexual abuse victim, which can cause trauma to a child and are ongoing issues.  1. Traumatic sexualization; 2. Betrayal; 3. Powerlessness; 4. Stigmatization.

[3] *Id.*; *see also* Oral, *et al.*, *Adverse Childhood Experiences and Trauma Informed Care: the Allure of Health Care*, PEDIATRIC RESEARCH, 79, 227-233 (2016); Raja, *et al.*, *Trauma Informed Care in Medicine: Current Knowledge and Future Research Directions*, FAMILY COMMUNITY HEALTH, 38, 216-26 (2015); U.S. Dept of Health and Human Services, Substance Abuse and Mental Health Services Administration, *SAMHSA's Concept of Trauma and Guidance for a Trauma-Informed Approach* (July 2014).

Empirical studies support that even when victims/survivors do not meet all of the criteria for PTSD, they are much more likely than their non-abused peers to suffer myriad psychiatric, behavioral, psychosocial, and physical health problems. *See, e.g.*, Susan Phipps-Yonas, *Sexual Trauma and Psychological Injuries: What Experts Need to Know*, PSYCHOLOGICAL INJURY LAW, 5, 12–36 (2012).

3

12. A victim's feelings of shame and stigmatization[4] can be a stronger predictor of ongoing trauma and depression than even the severity of the abuse itself.[5]

13. Publication of a victim's name and abuse history, without the victim's consent, will likely *increase* the victim's feelings of shame and stigmatization.[6]

14. There is a strong association between PTSD and mental defeat involving negative beliefs about the self and a lack of control over one's life.[7]

15. Victim/survivors of childhood sexual abuse who were anonymous but who, now, against their will are publicly outed, will likely experience renewed feelings of loss of control, hopelessness, and stigmatization (even if such feelings were previously resolved or moderated through therapy).[8]

---

[4] The concept of "stigmatization" is defined as, internal feeling of badness, shame, and guilt. Stigmatization, in particular, has been identified as a key dynamic in explaining the link between sexual abuse victimization and negative emotional and social consequences for victims. *See* Finkelhor & Brown, *supra*, at note 2.

[5] Feiring, C., Taska, L., & Chen, K., *Trying to understand why horrible things happen: Attribution, shame, and symptom development following sexual abuse*, CHILD MALTREATMENT 7, 25-39 (2002); *see also* Oral, *et al.*, *Adverse Childhood Experiences and Trauma Informed Care: the Allure of Health Care*, PEDIATRIC RESEARCH, 79, 227-233 (2016).

[6] *See, e.g.*, Jones, L., Finkelhor, D., & Beckwith, J., *Protecting Victims' Identities in Press Coverage of Child Victimization*, JOURNALISM, 11, 347-367, (2010).

[7] Jessica Bernardi & Laura Jobson, *Investigating the Moderating Role of Culture on the Relationship Between Appraisals and Symptoms of Posttraumatic Stress Disorder*, CLINICAL PSYCHOLOGICAL SCIENCE, 7, 1000-13 (2019).

[8] *See* Jessica Bernardi & Laura Jobson, *Investigating the Moderating Role of Culture on the Relationship Between Appraisals and Symptoms of Posttraumatic Stress Disorder*, CLINICAL PSYCHOLOGICAL SCIENCE, 7, 1000-13 (2019); Amy R. Stewart, et al., *Positive Affect as a Buffer Between Chronic Stress and Symptom Severity of Emotional Disorders*, CLINICAL PSYCHOLOGICAL SCIENCE, 7, 914-927 (2019).

4

16. The above psychological facts are why social scientists, courts, legal journals, and media reports recognize the necessity for public anonymity of sexual assault victims seeking criminal or civil redress.[9]

**Conclusion:**

17. In summary, when victims/survivors of childhood sexual abuse take legal action, it is critical that they are not re-victimized during that process. The stigmatization these victims feel, specifically, the long-held fear that their loved ones, friends, neighbors, and/or co-workers may now see them differently, in light of their history of sexual abuse, becomes closer to a reality when they file a lawsuit. One way to protect them from re-victimization and unnecessary additional psychological harm is to shield their identity from public disclosure.

18. This is my opinion to a reasonable degree of psychological certainty and one that is generally accepted within the field of psychology and the scientific community.

Dated: 09/07/21

Susan Phipps-Yonas, Ph.D., L.P.

Subscribed and sworn before me
this 7th day of September, 2021

Kristy Lord
Notary Public



KRISTY LORD
Notary Public · Arizona
Maricopa County
Commission # 581222
My Comm. Expires May 5, 2024

---

[9] *See, e.g.*, Garvin, *et al.*, *Protecting Victims' Privacy Rights: The Use of Pseudonyms in Civil Law Suits*, NATIONAL CRIME VICTIM LAW INSTITUTE AT LEWIS & CLARK LAW SCHOOL, July Bulletin, 2011 (citing Dean J. Kilpatrick & Randy K. Otto, *Constitutionally Guaranteed Participation in Criminal Proceedings for Victims: Potential Effects on Psychological Functioning*, 34 Wayne L. Rev. 7, 25 (1987) (describing victims' further victimization by the justice system) *also citing, Commonwealth ex rel. Platt v. Platt*, 404 A.2d 410, 429 (Pa. Super Ct. 1979); *also citing, Doe v. Firm*, No. CV065001087S, 2006 WL 2847885, at *5 (Conn. Super. Ct. Sept. 22, 2006) ("[t]o force the plaintiff to proceed without the protection of the pseudonym Jane Doe could only subject the plaintiff to additional psychological harm and emotional distress.")).