UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| JA-Father Doe 1 et al., | Case No. 21-cv-1985 (JWB/DJF) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| Anthony Joseph Lazzaro, | |
| Defendant. | |

---

This matter is before the Court on Plaintiffs' Motion for Pre-Judgment Attachment ("Motion") (ECF No. 29). Plaintiffs seek prejudgment attachment of Mr. Lazzaro's 2010 Ferrari VIN ZFF65LJA9A0173846 ("Ferrari"), primarily because they believe Mr. Lazzaro's conduct in a recent criminal forfeiture proceeding demonstrates a risk of collectability in this action supporting a need for prejudgment attachment (ECF No. 30). For the reasons given below, the Court recommends granting the Motion.

**I.     Background**

    **A.     Criminal Conviction and Forfeiture Proceedings**

On March 31, 2023, Mr. Lazzaro was convicted of one count of conspiracy to commit sex trafficking of minors and five counts of sex trafficking of minors, including Plaintiff JA-Minor Doe 1, in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"). *United States v. Lazzaro*, 21-cr-173 (PJS/DTS) (D. Minn.) (*see* ECF No. 346). On December 15, 2020, during the course of the criminal investigation preceding Mr. Lazzaro's convictions, the Government executed a search warrant at his condominium in downtown Minneapolis ("Apartment") (*see* ECF No. 33, Ex. 4 at 2–3). During the search, the Government seized precious

1

metals, gold bars, approximately $371,000 in U.S. Currency, approximately $6,247 in foreign currencies, and various electronic devices (*id.* at 1–5). Approximately eight months later, in August 2021, the Government seized the Ferrari, which Mr. Lazzaro values at $100,000 (*id.* at 14–16). In October 2021, Mr. Lazzaro moved the criminal trial court to return the seized U.S. Currency, the foreign currencies, and the Ferrari (*id.* at 19). In his motion papers, he indicated that, at that point in time, the Government had returned over "$1 million in gold bars, other precious metals, and foreign currencies it seized from his apartment" (*id.* at 1–2). In December 2021, Mr. Lazzaro and the Government stipulated to the Government returning his U.S. Currency, but the parties noted that they had continuing disputes regarding some of Mr. Lazzaro's other seized property (ECF No. 33, Ex. 6). On that same day, the Government filed a bill of particulars seeking the forfeiture of: (1) Mr. Lazzaro's Apartment; (2) the Ferrari; and (3) various electronic devices (ECF No. 33, Ex. 7).

While the Government's forfeiture claim was still pending before the court, Mr. Lazzaro conveyed the Apartment via quit claim deed back to himself and to his girlfriend as joint tenants, though she previously held no property interest in the Apartment (ECF No. 33, Ex. 8). The quit claim deed indicates Mr. Lazzaro's girlfriend paid "$3,000 or less" for her ownership interest in the Apartment (*id.* at 2), while Hennepin County property tax records state the property was assessed on January 2, 2022 at an estimated value of $863,000 (ECF No. 33, Ex. 9 at 2). In April 2022, the criminal trial court denied Mr. Lazzaro's requests to vacate the Government's restraints on his electronic devices and the Ferrari (ECF No. 33, Ex. 10).

In August 2023, following Mr. Lazzaro's conviction, and in connection with the criminal forfeiture proceedings, the criminal trial judge ordered Mr. Lazzaro to forfeit the Apartment and a Blackberry cell phone, but not the Ferrari (ECF No. 33, Ex. 3 at 7). Nevertheless, the parties in

this case represented that, as of the date of the Motion hearing, the Ferrari still remained in the Government's possession.

### B. Plaintiffs' Civil Action Against Mr. Lazzaro

On September 9, 2021, during the course of Mr. Lazzaro's criminal proceedings, Plaintiffs brought a civil action against Mr. Lazzaro for the conduct underlying his eventual criminal convictions, including a civil claim under the TVPRA. The TVPRA dictates that any "victim of a violation of [the TVPRA] may bring a civil action against the perpetrator … in an appropriate district court of the United States and may recover damages and reasonable attorneys' fees." 18 U.S.C. § 1595(a). On November 16, 2021, the United States intervened to file a motion to stay these proceedings (ECF No. 15) pending the outcome of Mr. Lazzaro's criminal trial, as is required by section 1595(b)(1) ("Any civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim."). Magistrate Judge John F. Docherty granted the motion to intervene and stayed the proceedings on September 30, 2021 (ECF No. 17). On June 12, 2023, the parties' filed a stipulation to lift the stay for the limited purpose of allowing Plaintiffs to file a motion for prejudgment attachment (ECF No. 25), which the Court approved (ECF No. 27).

Plaintiffs filed their Motion for Pre-Judgment Attachment on August 11, 2023 (ECF No. 29), and the Court held a hearing on the Motion on October 3, 2023 (ECF No. 40). The Court requested additional information from the parties (*see* ECF No. 40) at the hearing, which they provided in subsequently filed letters (*see* ECF Nos. 41–42).

### C. Motion for Pre-Judgment Attachment

As required by Minn. Stat. § 570.026, subd. 1, Plaintiffs filed an affidavit in connection with their Motion indicating that: (1) the factual basis for their civil claims is Mr. Lazzaro's felony

conviction under the TVRPA for conduct he committed against Plaintiff JA-Minor Doe 1; (2) they bring a civil claim under the TVRPA in this action arising from the same conduct; and (3) the amount they are seeking in damages is $5,000,000 (ECF No. 32).

Plaintiffs point out that that, in moving to dismiss his criminal Indictment, Mr. Lazzaro described himself as "an up-and-coming real estate owner and entrepreneur" and a "young man with growing wealth, as well as an interest in local politics," which "garnered him both professional and personal attention" (ECF No. 33, Ex. 11 at 1). He argued his growing wealth meant that he had been "sought out by many parties seeking his financial assistance, from political strategists to non-profit organizations, friends, acquaintances, and many single women." (*Id.* at 1–2.) He also stated that "[h]e enjoyed taking his dates and friends to lavish dinners and buying them gifts." (*Id.* at 2.) Plaintiffs allege he was involved with dozens of businesses across the country and readily flaunted his wealth by posting pictures on social media carrying tens of thousands of dollars, sitting atop a private jet, and driving the Ferrari (ECF No. 30) (citing ECF No. 1 ¶¶ 8, 10).

According to the Government, as part of his growing wealth and connections, Mr. Lazzaro's "ha[d] multiple residences in other states, including Idaho and North Carolina" (ECF No. 33, Ex. 1 at 11). Plaintiffs allege Mr. Lazzaro owned six properties in North Carolina when they initiated this action. However, from March to September 2023, he sold four of the six properties—three for $400,000 and one for $390,000 (ECF No. 41 at 2). Plaintiffs further assert Mr. Lazzaro owned a home in Hennepin County, which he sold $820,000. (*Id.*) Though Plaintiffs state they cannot determine exactly how much Mr. Lazzaro is worth, "the bond report prepared by U.S. Probation and Pretrial Services" indicated Mr. Lazzaro "has a net worth of more than 2 million dollars, including money offshore" (ECF No. 33, Ex. 1 at 11).

4

Plaintiffs pledge that if the Court grants their Motion they will store the Ferrari in a controlled, secured, storage facility with 24-hour security (ECF No. 41 at 1). They further state they will insure the vehicle while it is stored and in their possession. (*Id.*)

**II.    Legal Standards**

Federal Rule of Civil Procedure 64(a) states that, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." This Rule expressly states that attachment is an available remedy. *See* Fed. R. Civ. P. 64(b). A party seeking attachment in federal court must "use state procedural law to seize property to secure satisfaction of a potential judgment." *Flame S.A. v. Primera Mar. (Hellas) Ltd.*, 09-cv-8138 (KTD), 2010 WL 481075, at *4 (S.D.N.Y. Feb. 2, 2010) (citing *Armada (Singapore) PTE Ltd. v. N. China Shipping Co., (BVI)*, 633 F. Supp. 2d 168, 170 (S.D.N.Y. 2009)); *see also, e.g.*, *B. Riley FBR, Inc. v. Clarke*, 18-cv-2318 (NEB/BRT), 2018 WL 7253601, at *4 (D. Minn. Nov. 21, 2018) (noting that parties seeking prejudgment attachment must comply with the state procedural requirement of including a detailed affidavit as part of their motion) (citing. Minn. Stat. § 570.026).

In Minnesota, the procedural requirements for obtaining attachment are governed primarily by Minn. Stat. § 570.026, which provides that:

> Subdivision 1. Motion. A claimant seeking to obtain an order of attachment in other than extraordinary circumstances shall proceed by motion. The motion shall be accompanied by an affidavit setting forth in detail:
>
> > (1) the basis and amount of the claim in the civil action; and
> > (2) the facts which constitute one or more of the grounds for attachment as specified in section 570.02.

Minn. Stat. § 570.026.

The substantive requirements for prejudgment attachment are governed by Minn. Stat. §§ 570.026 and 570.02. Section 570.026, subd. 3 states that an "order for attachment may be issued only if the claimant has demonstrated the probability of success on the merits, and the claimant has demonstrated facts that show the existence of at least one of the six grounds stated in section 570.02." Plaintiffs base their Motion on section 570.02, subd. 1(5), which states that an order of attachment may be issued "when the respondent has committed any act or omission, for which the respondent has been convicted of a felony, giving rise to the claim upon which the civil action is brought." Nevertheless, even if the movant establishes a probability of success on the merits and establishes that a felony conviction serves as the basis for the civil action at issue, an order of attachment still cannot issue if either: (1) the circumstances do not constitute a risk of collectability of any judgment that may be entered; or (2) (i) there is a nonfrivolous defense to the merits of the claim or "a counterclaim in an amount equal to or greater than the claim;" (ii) respondent's interests cannot be protected by a bond; and (iii) any harm to respondent resulting from a seizure would outweigh the harm suffered by a claimant if there is no attachment. Minn. Stat. § 570.026, subd. 3. A vehicle cannot be attached if it does not exceed $5,000 in value or if it is modified and does not exceed more than $50,000 in value. Minn. Stat. § 550.37, subd. 12a (establishing exemption from attachment or garnishment for certain vehicles).[1]

A court granting a motion for prejudgment attachment must order the party obtaining the attachment to "post a bond in the penal sum of at least $500, conditioned that if judgment be given for the respondent or if the order is vacated, the claimant will pay all costs that may be awarded against the claimant and all damages caused by the attachment." Minn. Stat. § 570.041, subd. 1.

---

[1] Mr. Lazzaro estimates the value of the Ferrari is approximately $100,000 (see ECF No. 33, Ex. 4 at 14-16; ECF No. 39 at 6, arguing that a bond of $10,000 represents 10% of the vehicle's estimated value). That the Ferrari is not exempt from attachment is thus uncontested.

"In establishing the amount of the bond, the court shall consider the value and nature of the property attached, the method of retention or storage of the property, the potential harm to the respondent or any party, and other factors that the court deems appropriate." *Id.*

If a court grants a motion for prejudgment attachment, it must issue an order meeting the specifications of Minn. Stat. § 570.051. This statute dictates, amongst other requirements, that an order of attachment must: "direct the sheriff of the county in which the court is located or of any other county to seize and safely keep all nonexempt property of the respondent or such specific property as the court may specify, or so much as is necessary to satisfy the amount claimed with expenses and costs using the full force of the county;" and "authorize the sheriff to keep the property attached in any manner considered appropriate in the reasonable judgment of the sheriff, unless the order otherwise specifies the method of keeping[.]" Minn. Stat. § 570.051, subd. 1(4)-(5). The statute does not authorize release of property to the claimant when prejudgment attachment is granted.

Minn. Stat. § 570.061 governs the execution of attachment orders. Subdivision 3 dictates that "[p]ersonal property shall be attached in the manner provided by law for levy of execution and, so far as practicable, the provisions relating to the levy shall govern the execution of the attachment order." This subdivision further explains that "[a]ttachment of personal property shall be a lien on the interest of the respondent in the personal property from the time of seizure by the sheriff or subjection to the control of the sheriff." The relevant "law for levy of execution" is Minn. Stat. § 550.12, governing levies on personalty, which dictates that "[p]ersonal property capable of manual delivery shall be levied upon by the officer taking it into custody."

7

### III. Analysis

Plaintiffs argue they establish grounds for prejudgment attachment because: (1) there is a probability of success on the merits since Mr. Lazzaro has already been convicted of committing the acts upon which their civil TVPRA claim is based; and (2) the requirements of Minn. Stat. § 570.02, subd. 1(5) are met because Mr. Lazzaro's felony convictions provide the basis for this civil suit. (*See* ECF No. 30.) Plaintiffs further assert Mr. Lazzaro's conduct since the Indictment establishes a risk of collectability. In particular, they argue his attempt to transfer half his interest in the Apartment to his girlfriend while the criminal forfeiture proceedings were pending shows he is willing to transfer his assets for pennies on the dollar to avoid compensating his victims for his crimes. (*See id.*) For the following reasons, the Court agrees with Plaintiffs and recommends granting the Motion.

### 1. Probability of Success on the Merits

The first requirement, probability of success, is easily met in this case. A federal jury has convicted Mr. Lazzaro of violating the TVRPA in a criminal case in which Plaintiff JA-Minor Doe 1 was one of the victims. That is all the statute requires to impose civil liability on Mr. Lazzaro. *See* 18 U.S.C. § 1595(a) (permitting any "victim of a violation of [the TVPRA to] bring a civil action against the perpetrator … in an appropriate district court of the United States … [to] recover damages and reasonable attorneys fees.") Since there is a final judgment of guilt against Mr. Lazzaro for violations of the TVPRA, Plaintiffs establish a probability of success on the merits. *Dehn v. Dehn*, No. PI04-01473, 2004 WL 5322255 (Minn. Dist. Ct. July 07, 2004) (finding a probability of success on the merits when the conduct underlying the defendant's criminal conviction was "the exact same conduct and law on which the claim for sexual abuse is based"). Mr. Lazzaro argues that because he did not plead guilty and is appealing the jury's verdict, his case

is distinguishable from *Dehn* (ECF No. 39 at 5–6), but this argument lacks merit.  Mr. Lazzaro's guilty verdict remains a final judgment on the merits pending his appeal.  Furthermore, Mr. Lazzaro raises no arguments challenging the particulars of Plaintiffs' case on the merits or attempting to explain why they have not established a likelihood of success.  (*See id.*)

### 2.     Grounds for Attachment

For similar reasons, Plaintiffs easily meet the second requirement for prejudgment attachment.  All they must establish is that Mr. Lazzaro "has committed any act or omission, for which [he] has been convicted of a felony, giving rise to the claim upon which the civil action is brought."  Minn. Stat. § 570.02, subd. 1(5).  Here there is no dispute that the conduct at issue in Mr. Lazzaro's criminal case establishes the facts underlying Plaintiffs' civil suit.  Since Mr. Lazzaro's TVPRA convictions give rise to Plaintiffs' TVPRA civil action, the second requirement is satisfied.

### 3.     Risk of Collectability

Mr. Lazzaro does not raise any counterclaims or assert any non-frivolous defenses to Plaintiffs' claims.  The only significant issue in dispute is thus whether Plaintiffs can establish a "risk of collectability" of any future judgment in their favor.  *See* Minn. Stat. § 570.026, subd. 3(1).  Plaintiffs base their Motion primarily on Mr. Lazzaro's decision to transfer half of his interest in his Apartment to his girlfriend while criminal proceedings seeking forfeiture of that same Apartment were pending.  Plaintiffs note that the Apartment was valued at $863,000 in 2022 and that he transferred his interest for no more than $3,000 (ECF No. 30 at 9–10).  They further note that: (1) Mr. Lazzaro has offshore bank accounts and cryptocurrency holdings that put him in the unique position of being able to retain his wealth while rendering himself judgment-proof; (2) he is motivated to render himself judgment-proof since his lifestyle and image have been built around

9

his wealth and social media presence (*id.*); (3) after Plaintiffs initiated this lawsuit, Mr. Lazzaro sold off a second property he owned in Hennepin County and four of the six properties he owned in North Carolina; and (4) the Ferrari is the only property in Minnesota known to Plaintiffs that they can seek to attach (ECF No. 41 at 1–2).

Mr. Lazzaro contends his wealth contradicts any finding of a risk of collectability: If Plaintiffs prevail in this litigation, he is much more likely than the average defendant to be able to pay a judgment in their favor (ECF No. 39 at 3–4). Mr. Lazzaro further argues the location of the property to be collected (whether in Minnesota or elsewhere) is irrelevant, since Plaintiffs could domesticate any judgment in their favor in this case in other states and then attach Mr. Lazzaro's out-of-state property if they need to. (*Id.*) Mr. Lazzaro also disputes Plaintiff's contention that the transfer of his interest in the Apartment to his girlfriend is significant, representing at the Motion hearing that Mr. Lazzaro's girlfriend was evicted from her residence and suggesting that was the reason for the transfer. Mr. Lazzaro further notes that he later forfeited the Apartment pursuant to the criminal trial court's order when he was sentenced and took no extreme measures to render it nonforfeitable. (*Id.*) He contends that, to establish a risk of collectability, "Plaintiffs must present specific facts that show Defendant has hidden or disposed of property with the intent to delay or defraud." (*Id.* at 4) (citing *First Fin. Sec., Inc. v. Lee*, No. 14-cv-1843 (PJS/SER), 2016 WL 7911332, at *2 (D. Minn. Jan. 14, 2016)).

The Court is not convinced the Apartment transfer was an entirely innocuous transaction. Mr. Lazzaro executed the quit claim deed on January 25, 2022. (ECF No. 33, Ex. 8 at 3.) At that time, he most certainly knew the Government was seeking forfeiture of the Apartment in connection with his criminal case. Indeed, the Government had noticed its claim on the property less than two months earlier. (*See* ECF No. 33, Ex. 7, U.S. Bill of Particulars for Forfeiture of

10

Property, dated December 13, 2021.)  Moreover, the amount Mr. Lazzaro received in that transaction—less than 1% of the market value of the interest he transferred[2]—further calls his motives into question.  Given the timing, circumstances, and extremely preferential nature of the transfer, it seems likely the property transfer was motivated, at least in part, by Mr. Lazzaro's desire to thwart the forfeiture and restitution for his victims.  *See Dehn*, 2004 WL 5322255 (Minn. Dist. Ct. July 07, 2004) (finding a risk of collectability when the defendant took out suspiciously timed mortgages encumbering his properties).  Mr. Lazzaro suggests he should be credited with proper motives because he did not take more extreme measures to hide the transfer. But real property transfers are publicly recorded, and under the circumstances any such attempts invariably would have been discovered and could have exposed him to additional criminal liability.  So, while he did not succeed in preventing the Apartment's eventual forfeiture, this fact does not compel the Court to reach a different conclusion.

Moreover, Mr. Lazzaro's principal argument is that Plaintiffs failed to present specific facts establishing an intent to hide or dispose of property with the intent to delay or defraud his creditors. (ECF No. 39 at 4) (citing *First Fin. Sec., Inc.*, 2016 WL 7911332, at *2).  But this requirement is derived from caselaw applying Minn. Stat. §§ 570.02, subd. 1(1) and (3).  *See, e.g.*, *First Fin. Sec., Inc.*, 2016 WL 7911332, at *2 (requiring the movant to establish "specific facts" showing an intent to defraud to satisfy section 570.02, subd. 1(1) or 1(3)).  Both of these statutory provisions apply only when the respondent's attempt to remove or hide property from creditors serves as the ground for prejudgment attachment.  *See* Minn. Stat. § 570.02, subd. 1(1) (applicable when the respondent has assigned property "with intent to delay or defraud the respondent's creditors"); Minn. Stat. §

---

[2] Half the market value of the Apartment in 2022 ($863,000) was $431,500.  $3,000 is .7% of $431,500.

570.02, subd. 1(3) (applicable when the respondent has converted property "for the purpose of placing the property beyond the reach of the respondent's creditors"). The statutory provision on which Plaintiffs base their claim, Minn. Stat. § 570.02, subd. 1(5), includes no similar requirement and applies to any civil case arising from the respondent's felony criminal conduct. The caselaw on which Mr. Lazzaro relies is therefore inapposite.

Mr. Lazzaro's conduct since this litigation began further weighs in favor of finding a risk of collectability. Plaintiffs assert that after they initiated this lawsuit, he sold another Minnesota property and four of the six apartments he owned in North Carolina (ECF No. 41 at 1–2), and Mr. Lazzaro has not disputed that assertion. (*See generally* ECF No. 42.) Mr. Lazzaro thus appears to be systematically selling off his real estate. The Court credits Plaintiffs' uncontested claim that Mr. Lazzaro has offshore bank accounts and experience holding cryptocurrencies, and finds he has better means than most to hide the proceeds of those sales in accounts where they cannot be attached to satisfy a judgment.

Finally, Mr. Lazzaro's alleged net worth does not mitigate the risk of collectability in this matter. The best available estimate of Mr. Lazzaro's net worth is the bond report prepared by U.S. Probation and Pretrial Services, which indicated "Lazzaro has a net worth of more than 2 million dollars, including money offshore" (ECF No. 33, Ex. 1 at 11). Further, when asked at the Motion hearing to identify assets that will be available for collection if Plaintiffs should obtain a judgment against Mr. Lazzaro, his counsel declined to provide any specific examples. Plaintiffs seek $5,000,000 in damages in this action (*see* ECF No. 32) and support their Motion with examples of other civil sex trafficking and abuse cases resulting in judgments or settlements greater than $5,000,000 (ECF No. 41 at 2–3). Mr. Lazzaro argues those cases are distinguishable, but he offers no alternative examples or any tangible estimate of his potential exposure in this case (*see* ECF

No. 42). Based on this record, the Court cannot speculate regarding the judgment Plaintiffs will obtain if they are successful, and must work from the presumption that their claims potentially could be worth $5,000,000 in damages as they assert. Since Mr. Lazzaro's net worth—including his offshore assets—is well short of that number, his purported wealth does not mitigate the risk to collectability of any judgment Plaintiffs may obtain. For the forgoing reasons, the Court finds Plaintiffs have met this statutory requirement for prejudgment attachment.

### 4.     Bond Requirement and Storage

Having concluded prejudgment attachment of the Ferrari is appropriate, the Court must determine the amount of the bond Plaintiffs are required to post before they can attach it. Minn. Stat. § 570.041, subd. 1 requires a party seeking prejudgment attachment to "post a bond in the penal sum of at least $500, conditioned that if judgment be given for the respondent or if the order is vacated, the claimant will pay all costs that may be awarded against the claimant and all damages caused by the attachment." "In establishing the amount of the bond, the court shall consider the value and nature of the property attached, the method of retention or storage of the property, the potential harm to the respondent or any party, and other factors that the court deems appropriate." *Id.*

Plaintiffs argue the standard minimum $500 bond amount should apply. Mr. Lazzaro offers conflicting positions, arguing for a $10,000 bond amount in his opposition memorandum (ECF No. 39 at 6), and a $20,000 bond amount at the Motion hearing. Mr. Lazzaro further requested at the hearing that, to the extent prejudgment attachment is granted, Plaintiffs be ordered to store the Ferrari in a secure, indoor, climate-controlled facility, and to provide any recommended ongoing vehicle maintenance. In their supplemental filing, Plaintiffs represented they would meet these requirements (ECF No. 41 at 1).

13

While Plaintiffs may be in the best position to ensure the continued security, maintenance and good condition of the Ferrari, based on the above-cited statues the District Judge cannot release it into Plaintiffs' custody. Instead, the court must direct the Hennepin County Sheriff—the "sheriff of the county in which the court is located"—to "seize and safely keep" the car "in any manner considered appropriate in the reasonable judgment of the sheriff" or as otherwise specified in the Court's order. Minn. Stat. § 570.051, subd. 1(4)–(5) (emphasis added). This Court considers these rules in addressing the appropriate bond amount and storage requirements.

The Court looks to other cases in determining the amount of Plaintiffs' bond and notes that Minnesota courts have imposed only a $500 bond in cases involving real properties valued at more than the Ferrari's estimated worth of $100,000. *E.g.*, *Marriage of Janssen v. Janssen*, No. A17-1042, 2018 WL 1570105, at *5 (Minn. Ct. App. Apr. 2, 2018) (finding court did not abuse its discretion in authorizing the attachment of $112,000 in property with a $500 bond); *Dehn*, 2004 WL 5322255 (Minn. Dist. Ct. July 07, 2004) (finding no error in assessment of $500 bond for the attachment of four properties). Furthermore, Mr. Lazzaro is incarcerated at this time and has no use for the vehicle, has not demonstrated any likelihood of success on the merits, and has not presented any defenses to Plaintiffs' claims. *See Dehn*, 2004 WL 5322255 (Minn. Dist. Ct. July 07, 2004) (considering these factors in determining bond amount). The Court takes this caselaw and these factors into account in recommending Plaintiffs' bond amount.

Mr. Lazzaro points out, however, that, unlike real property, the Ferrari is easily movable and can be stolen without a trace. Moreover, as suggested by Mr. Lazzaro's storage and maintenance requests, a car is more easily damaged by the elements and lack of maintenance. These points are well taken. To mitigate Mr. Lazzaro's concerns, the Court recommends ordering the Sheriff—to extent possible—to keep the car is a secure, indoor facility that is climate

controlled. The Court further recommends Plaintiffs' bond be set in the amount of $3,000 to secure the Ferrari against damage that may be incurred while it is in the Sheriff's custody.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

1. That Plaintiffs' Motion for Pre-Judgment Attachment (ECF No. [29]) be **GRANTED** and an Order be entered consistent with the above findings and the requirements of Minn. Stat. § 570.051.

2. If the vehicle remains in the custody of the United States when a final order on the Motion is entered, that the United States be ordered to release the vehicle, 2010 Ferrari VIN ZFF65LJA9A0173846, and deliver it into the possession of the Hennepin County Sheriff, to the extent the United States no longer claims an interest in retaining it;

3. If the vehicle is not in the custody of the United States when a final order on the Motion is entered, that the Hennepin County Sheriff, and the sheriffs of any other counties where the vehicle might be found, be ordered to take appropriate steps, using the full force of the county, to seize the vehicle, 2010 Ferrari VIN ZFF65LJA9A0173846;

4. That the Hennepin County Sheriff be ordered to safely keep the Ferrari in an indoor, secure, climate-controlled facility, to the extent such facilities are available, and provide any additional protection or maintenance to the vehicle that the Sheriff, in her reasonable judgment, deems appropriate; and

5. That Plaintiffs be ordered to post a $3,000 bond within seven days after the entry of an order adopting this Report and Recommendation.

Dated: December 19, 2023          *s/ Dulce J. Foster*
                                  Dulce J. Foster
                                  United States Magistrate Judge

# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).